**Bayou v 355 W. 20th St. Corp.**

2025 NY Slip Op 32795(U)

August 14, 2025

Supreme Court, New York County

Docket Number: Index No. 152395/2025

Judge: Emily Morales-Minerva

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| PRESENT: | **HON. EMILY MORALES-MINERVA** | PART | 42M |
|---|---|---|---|
| | *Justice* | | |

-----------------------------------------------------------------------X

BRADLEY BAYOU, MARK ITKIN

Petitioner,

- v -

355 WEST 20TH STREET CORPORATION,

Respondent.

-----------------------------------------------------------------------X

| INDEX NO. | 152395/2025 |
|---|---|
| MOTION DATE | N/A |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 22, 24, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41

were read on this motion to/for _____MISCELLANEOUS_____.

APPEARANCES:

>   Quinn McCabe, LLP, New York, NY (Sara Leston, Esq., of counsel), for petitioners.

>   Port & Sava, Lynbrook, NY (George Samuel Sava, Esq., of counsel), for respondent.

EMILY MORALES-MINERVA, J.S.C.

In this action, petitioners BRADLEY BAYOU and MARK ITKIN move, by petition and order to show cause (mot. seq. no. 001), pursuant to RPAPL § 881, for orders granting it (1) a license to enter upon and access the property of respondent 355 WEST 20TH STREET CORPORATION to conduct a pre-construction survey; (2) access to implement and maintain a controlled access zone in the front areaway, rear yard, and roof of respondent's property; (3) access to the airspace of respondent's property to install, maintain, and remove an engineered enclosure scaffold system;

and (4) access to the roof of respondent's property to perform work on the chimneys located thereon.

For the reasons set forth below, the application is granted.

BACKGROUND

Petitioners BRADLEY BAYOU and MARK ITKIN (petitioners), owners of property located at 353 West 20th Street, New York, New York, Block 744, Lot 10 (project premises), are performing certain renovations and construction of an extension on the premises (project), which adjoin 355 West 20th Street, New York, New York, Block 744, Lot 9 (adjacent premises), owned by respondent 355 WEST 20TH STREET CORPORATION (respondent) (see New York State Court Electronic Filing System [NYSCEF] Doc. No. 001, Petition). Petitioners maintain that the project will take approximately twelve months to complete (id.).

Prior to commencing the project, petitioners allege that it is required, pursuant to Sections 3309.3[1] and 3309.17[2] of the New

---

[1] New York City Building Code § 3309.3 provides, "When permission to enter upon adjoining property has been obtained, a physical examination of such property shall be conducted by the person causing the construction or demolition operations prior to the commencement of the operations and at reasonable periods during the progress of the work. Observed conditions shall be recorded by the person causing the construction or demolition operations, and such records shall be made available to the department upon request."

[2] New York City Building Code § 3309.17 provides, as pertinent here, "The engineered enclosure system shall be positioned exterior of the building under construction or demolition and shall cover all areas along the exposure where work is occurring or openings in the building are present . . . A controlled access zone . . . shall be

York City Building Code, to (1) perform a pre-construction survey of the adjacent premises; (2) protect the front areaway and roof of the adjacent premises while petitioners install, maintain, and remove an engineered enclosure scaffold system in the front of the project premises (front enclosure system); (3) protect the roof of the adjacent premises while petitioners install, maintain, and remove an engineered enclosure scaffold system extending from the side of the premises into the airspace above the adjacent premises (side enclosure system); and (4) protect the rear yard of the adjacent premises while petitioners install, maintain, and remove an engineered enclosure scaffold system in the rear yard of the project premises (rear enclosure system) (see NYSCEF Doc. No. 21, Petitioners' Memorandum of Law in Support of Order to Show Cause).

Petitioners maintain that the front, side, and rear enclosure systems will protect the public and occupants of the adjacent premises from falling debris (see id.). Further, the front and rear enclosure systems will be located entirely on the project premises, and the side enclosure system will extend five feet into the airspace of the adjacent premises (see id.).[3]

---

provided to protect the adjoining property whenever the engineered enclosure system is installed or removed, and when otherwise warranted during repairs, maintenance, or adjustments. Such controlled access zone or protection shall be indicated on the plans for the engineered enclosure system."

[3] According to petitioners, the side enclosure system "shall extend 5 feet into the airspace of the adjacent premises and shall consist of pipe scaffolding with a 3/4" plywood sheathing secured to the interior of pipe scaffolding with 1/8" wood secured at 8" [on center] embedded into 2" x 6" continuous railing, heavy duty bracket

**152395/2025   BAYOU, BRADLEY ET AL vs. 355 WEST 20TH STREET CORPORATION**          **Page 3 of 16**
**Motion No. 001**

[* 3]

Petitioners indicate that in order to protect the front areaway, roof, and rear yard of the adjacent premises, petitioners must (1) implement and maintain a controlled access zone on the roof, including flat roof protection,[4] as well as on the front areaway, for one week while petitioners install the front enclosure system, and one week while petitioners remove the front enclosure system; (2) implement and maintain a controlled access zone on the roof, including flat roof protection, for one week while petitioners install the side enclosure system, and one week while petitioners remove the side enclosure system; and (3) implement and maintain a controlled access zone in the rear yard for one week while petitioners install rear enclosure system, and one week while petitioners remove the rear enclosure system (see id.). During the installation and removal of the enclosure systems, petitioners indicate that no access will be permitted to the front areaway, roof, and rear yard (id.).

These protective measures were proposed by non-party Site Safety LLC (Site Safety), who petitioners retained to draft a site safety plan in accordance with the protective measures required under the New York City Building Code (see NYSCEF Doc.

---

[typical], OSHA Plank with a pipe scaffold and full netting enclosure" (NYSCEF Doc. No. 21, Petitioners' Memorandum of Law in Support, p 7).

[4] Per petitioners, the extent of the roof protection "shall consist of flame-retardant plywood on top of 2" flame retardant 2"x10" wood planks on top of 2" flame retardant styrofoam" (id.).

**152395/2025  BAYOU, BRADLEY ET AL vs. 355 WEST 20TH STREET CORPORATION**
**Motion No.  001**

**Page 4 of 16**

[* 4]

No. 18, Affidavit of Khalid Algende, Licensed Professional Engineer with Site Safety LLC). Said site safety plan includes drawings of the proposed protections to be installed on the adjacent premises, as well as drawings of the proposed enclosure systems (see id.). Non-party Khalid Algende, licensed Professional Engineer with non-party Site Safety, LLC, affirms that "the[se] methods of protecting the front areaway, roof, and rear yard as set forth [in the site safety plan] are standard and safe methods of complying with Section 3309.17 of the [New York City Building] Code" (id.).

Petitioners allege that it has attempted to secure respondent's consent to access the adjacent property to perform the applicable work (see NYSCEF Doc. No. 21, Petitioners' Memorandum of Law in Support). In this regard, petitioners allege that it (1) provided respondent with a proposed licensing agreement; (2) revised the project plans to minimize the access petitioners needed to the adjacent premises, including revising the plans to avoid underpinning the adjacent premises and foregoing the installation of monitoring equipment; (3) provided respondent with the support of excavation and foundation drawings, despite petitioners' contention that neither set of drawings related to the access petitioners required; (4) revised the plans a second time to utilize the engineered enclosure scaffold system discussed herein, which

[* 5]

would no longer require petitioners to install temporary protections at the adjacent premises; (5) offered respondent a pro-rated license fee of $4,000.00 per month while the controlled access zones were in place; and (6) provided a revised license agreement which incorporated the pro-rated license fee and revisions to the project plan (id.).

However, petitioners allege that respondent refused to accept the revised license agreement, demanding that petitioners perform underpinning underneath the adjacent premises.

Thereafter, petitioners commenced this action against respondent and now move, by order to show cause, pursuant to RPAPL § 881, for orders granting it (1) a license to enter upon and access the adjacent property to conduct a pre-construction survey; (2) access to implement and maintain a controlled access zone in the front areaway, rear yard, and roof of the adjacent premises; (3) access to the airspace of the adjacent premises to install, maintain, and remove an engineered enclosure scaffold system extending from the side of the project premises into the airspace above the adjacent premises; and (4) access to the roof of the adjacent premises to perform work on the chimneys located therein.

In support of its petition and order to show cause, petitioners submit the following exhibits: (1) petitioners' deed to the project premises (NYSCEF Doc. No. 02); (2) respondent's

deed to the adjacent premises (NYSCEF Doc. No. 03); (3) lot map of the project premises and adjacent premises (NYSCEF Doc. No. 04); (4) letter from petitioners to respondent, requesting access, dated July 17, 2023 (NYSCEF Doc. No. 05); (5) e-mails between petitioners and respondent, discussing, among other things, the proposed license agreement (NYSCEF Doc. Nos. 06-17); (6) affidavit of Khalid Algende, Licensed Professional Engineer at Site Safety LLC (NYSCEF Doc. No. 18); (7) the Site Safety Plan, dated September 12, 2024 (NYSCEF Doc. No. 19); and (8) the Enclosure Drawings, dated February 04, 2025 (NYSCEF Doc. No. 20).

Respondent appears and opposes the application,[5] arguing, among other things, that (1) underpinning is required; (2) petitioners breached two prior agreements with respondent; and (3) petitioners have failed to make good faith efforts to negotiate the license (see NYSCEF Doc. No. 30, Respondent's Memorandum of Law in Opposition). In opposition, respondent submits, among others, the following exhibits: (1) affirmation of Ti-Hua Chang, President of respondent (NYSCEF Doc No. 31); (2) affirmation and CV of John Nakrosis, Architect[6] (NYSCEF Doc. Nos. 32 and 39); (3) Department of Building violations (NYSCEF

---

[5] The court will accept respondent's untimely opposition papers, as petitioners do not demonstrate any prejudice (see Sanchez v Steele, 149 AD3d 458, 458 [1st Dept 2017]).
[6] The affirmation of John Nakrosis does not address the safety measures proposed by petitioner, i.e. the engineered enclosure scaffold systems or the controlled access zones (see NYSCEF Doc. No. 32).

**152395/2025 BAYOU, BRADLEY ET AL vs. 355 WEST 20TH STREET CORPORATION** **Page 7 of 16**
**Motion No. 001**

Doc. No. 37); and (4) Geotechnical Investigation Report, dated February 18, 2016 (NYSCEF Doc. No. 36).

The matter was returnable in Part 42M, 111 Centre Street, New York, New York, on May 12, 2025, at 11:00 A.M. At the call of the calendar, petitioners and respondents appeared, by counsel.

ANALYSIS

Section 881 of the Real Property Law provides, as relevant here,

> "when an owner or lessee seeks to make improvements or repairs to real property so situated that such improvements or repairs cannot be made by the owner or lessee without entering the premises of an adjoining owner or his lessee, and permission so to enter has been refused, the owner or lessee seeking to make such improvements or repairs may commence a special proceeding for a license so to enter"

(RPAPL § 881).

The license terms are "addressed to the sound discretion of the court, which must apply a reasonableness standard in balancing the potential hardship to the applicant if the petition is not granted against the inconvenience to the adjoining order if it is granted" (Queens Theater Owner, LLC v WR Universal, LLC, 192 AD3d 690 [2d Dept 2021]). In this same vein, "[c]ourts are required to balance the interests of the parties and should issue a license when necessary, under

[* 8]

reasonable conditions, and where the inconvenience to the adjacent property owner is relatively slight compared to the hardship of his neighbor if the license is refused" (Bd. of Mgrs. of Artisan Lofts Condominium v Moskowitz, 114 AD3d 491, 492 [1st Dept 2014]).

The factors which the court may consider "in determining the petition include the nature and extent of the requested access, the needed protections for the adjoining property, the lack of an alternative means to perform the work, the public interest in the completion of the project, and the measures in place to ensure the financial compensation of the adjoining owner for any damage or inconvenience resulting from the intrusion" (Queens Theater Owner, LLC, 192 AD3d at 690-691; see also Matter of Queens Coll. Special Projects Fund, Inc. v Newman, 154 AD3d 943, 943-944 [2d Dept 2017]).

"Although the determination of whether to award a license fee is discretionary, . . . , the grant of licenses pursuant to RPAPL 881 often warrants the award of contemporaneous license fees" (400 E57 Fee Owner v 405 East 56th St., LLC, 193 AD3d 626 [1st Dept 2021] [emphasis in original; internal quotation marks omitted], quoting DDG Warren LLC v Assouline Ritz 1, LLC, 138 AD3d 539, 539-540 [1st Dept 2016]). "This is because the respondent to an 881 petition has not sought out the intrusion and does not derive any benefit from it . . . Equity requires

that the owner compelled to grant access should not have to bear any costs resulting from the access" (400 E57 Fee Owner, 193 AD3d at 626, quoting DDG Warren LLC, 138 AD3d at 540).

Further, a license that entails substantial interference with the use and enjoyment of a neighboring property decreases the value of the property during the license period (Panasia Estate, Inc. v 29 West 19 Condominium, 204 AD3d 33, 37 [1st Dept 2022], quoting DDG Warren LLC, 138 AD3d at 540).

Here, petitioners' documentary evidence -- particularly the affidavit of licensed professional engineer Khalid Algenge, the detailed site safety plan, and its corresponding drawings -- adequately establish that entry and access to the adjacent premises is necessary, and that the proposed methods of protection comply with New York City Building Code (see Tsoumpas 1105 Lexington Equities, LLC v 1109 Lexington Ave. LLC, 189 AD3d 524, 525 [1st Dept 2021] [finding that "petitioner submitted detailed site safety plans"]). Further, respondent does not dispute that said safety measures will protect both the public and the occupants of the adjacent premises from falling debris and subsequent injury, which is of the utmost importance in renovation and construction projects. While respondent contends that underpinning is required, it submits no affidavit of a licensed professional engineer to contradict petitioner's proof in this regard.

Additionally -- though access to the front areaway, roof, and rear yard will not be permitted for approximately two weeks -- this is a relatively brief time period and limited encroachment which apparently has no affect on areas required for living and daily activities (see House 93, LLC v Lipton, 178 AD3d 545, 545 [1st Dept 2019][finding that issuing petitioner a license to access a small portion of respondent's property for 60 days is reasonable and that the inconvenience respondent may face is slight]). In contrast, there is no dispute that failure to obtain a license will cause petitioner's financial losses including administrative costs, insurance expenses, labor and time (see NYSCEF Doc. No. 21, Petitioners' Memorandum of Law in Support, p 20).

In light of the principle that RPAPL § 881 provides courts with the discretion to craft an appropriate licensing fee upon such terms as justice requires (see Tsoumpas 1105 Lexington Equities, LLC, 189 AD3d at 525), the court grants respondent a license fee of $133.33 per day for each day the controlled access zones are in place.[7]

This license fee is appropriate as petitioners' use of the subject area temporarily interferes with "the use and enjoyment

---

[7] Petitioners, in its revised license agreement proposal, proffered a pro-rated license fee of $4,000.00 per month while the controlled access zones are in place. This license fees takes that proffered amount into account, but instead, applies it on a day-to-day basis. The court notes that respondent did not counter this amount as inadequate or as being insufficient in any regard.

**152395/2025 BAYOU, BRADLEY ET AL vs. 355 WEST 20TH STREET CORPORATION**
**Motion No. 001**

**Page 11 of 16**

of the [subject area on the] neighboring property" (Panasia Estate, Inc., 204 AD3d at 37; see also House 93, LLC, 178 AD3d at 546 [holding that "the court providently determined that respondent be awarded the license fee award of $2,000.00 per month as a result of her temporary loss of enjoyment to the small portion of the rear yard petitioner will be accessing pursuant to the license"]).

Lastly, petitioners proffered to add respondent as an additional insured onto its insurance policy, which will provide additional financial protection to respondent (see NYSCEF Doc. No. 21, Petitioners' Memorandum of Law in Support [providing that "petitioners [are] willing to name adjacent owner as an additional insured on the policy"]). Therefore, petitioners shall name respondent as an additional insured on the general liability insurance policy.

The respondent shall be on the policy from the date on which the licensing access begins until the date it expires, and the policy shall be in the amount of not less than $1,000,000.00 per occurrence and not less than $2,000,000.00 in the aggregate; with workers compensation and employer's liability insurance of not less than $1,000,000.00 bodily injury coverage, per employee; and excess liability coverage in the amount of not less than $5,000,000.00 (see NYSCEF Doc. No. 34, Proposed

License Agreement [discussing the proposed insurance policy coverage and limitations]).

Accordingly, it is hereby

ORDERED that petitioners' petition and order to show cause are granted; it is further

ORDERED that petitioners are granted a license to access the adjacent premises located at 355 West 20th Street, New York, New York, Block 744, Lot 9 for a period of twelve (12) months from the commencement of such access on the following terms and conditions:

i. Petitioners shall conduct a pre-construction survey of the adjacent premises.

ii. Petitioners shall perform its renovation and construction project in accordance with all applicable laws and regulations;

iii. Petitioners shall follow and implement all applicable safety rules and regulations, including, but not limited to, OSHA requirements;

iv. Petitioners shall not have access to underpin the adjacent premises;

v. Petitioners shall provide evidence, including certificates of insurance and policy agreements, of insurance coverage to respondent; specifically, petitioners are to name respondent as an additional

insured on its commercial general liability policy, which shall continue for the duration of the access license, with commercial general liability insurance in the amount of not less than $1,000,000.00 per occurrence and not less than $2,000,000.00 in the aggregate; with workers compensation and employer's liability insurance of not less than $1,000,000.00 bodily injury coverage, per employee; and excess liability coverage in the amount of not less than $5,000,000.00;

vi. Petitioners shall install, maintain, and remove a controlled access zone on the roof, including flat roof protection, as well as on the front areaway, while petitioners install and subsequently remove the front engineered enclosure scaffold system;

vii. Petitioners shall install, maintain, and remove a controlled access zone on the roof, including flat roof protection, while petitioners install and subsequently remove the side engineered enclosure scaffold system;

viii. Petitioners shall install, maintain, and remove a controlled access zone in the rear yard, including flat roof protection, while petitioners install and subsequently remove the rear engineered enclosure scaffold system;

[* 14]

  ix. Petitioners shall access the airspace of the adjacent premises to install, maintain, and remove the engineered enclosure scaffold system, which shall extend from the side of the project premises five (5) feet into the airspace of the adjacent premises, and shall consist of pipe scaffolding, plywood sheathing, continuous railing, and a full netting enclosure; and

  x. Petitioners shall access the roof of the adjacent premises to perform work on the adjacent premises' chimneys; it is further

ORDERED that petitioners are directed to pay respondent a license fee of $133.33 per day for each day the controlled access zones are in place, with the first payment due to respondent on the date in which the controlled access zones are erected, and the last payment due to respondent upon the date in which the controlled access zones are removed in their entirety; it is further

ORDERED that, if petitioners do not complete the outstanding work within twelve (12) months from the commencement of the access, then it shall apply for an extension of its license, such extension granted upon a showing of good cause shown; it is further

**152395/2025  BAYOU, BRADLEY ET AL vs. 355 WEST 20TH STREET CORPORATION**  **Page 15 of 16**
**Motion No.  001**

15 of 16

[* 15]

ORDERED that petitioners shall notify respondent in writing when its work has been completed and it has removed all protection from the adjacent premises;

ORDERED that petitioners shall indemnify, defend, and hold harmless respondent from and against any and all causes of action damages, claims, demands, judgments, liens, litigation, liability, penalties, orders, losses, costs or expenses, to the extent attributable to property damage, personal injury or wrongful death; it is further

ORDERED that, within ten (10) days after issuance of this decision, counsel for petitioners shall serve a copy of this decision and order, with notice of entry, upon respondents; and it is further

ORDERED that the Clerk of Court shall mark the file accordingly.

05/14/2025
**DATE**

EMILY MORALES-MINERVA, J.S.C.

| CHECK ONE: | X | CASE DISPOSED | | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | X | GRANTED | DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |